1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JAMES F. HOPKINS, JR.,

                  Plaintiff,

v.

KETTLE FALLS INTERNATIONAL
RAILWAY, LLC, a Colorado
Corporation,

                  Defendant.

NO:  CV 08-348-RMP

ORDER DENYING SUMMARY
JUDGMENT FOR PLAINTIFF

Before the Court is Plaintiff's Motion for Summary Judgment (Ct. Rec. 28). The Court has heard argument on these issues and reviewed and considered the parties' submissions and the remaining record in this case.

Plaintiff filed a complaint for an injury under the Federal Employers' Liability Act, the Federal Railroad Safety Act, the Federal Safety Appliance Act, and the Code of Federal Regulations (Ct. Rec. 1).  Defendant answered Plaintiff's complaint by asserting, among other things, that Plaintiff was contributorily negligent and failed to mitigate his damages (Ct. Rec. 3).  Plaintiff moved for partial summary judgment on the issue of Defendant's violation of the Federal

ORDER DENYING SUMMARY JUDGMENT FOR PLAINTIFF ~ 1

Safety Appliance Act and Defendant's affirmative defense of contributory

negligence.

## I. BACKGROUND

On April 25, 2005, Defendant Kettle Falls International Railway, LLC

("Kettle Falls") hired Plaintiff James F. Hopkins, Jr. ("Mr. Hopkins") as a

brakeman (Ct. Rec. 31 at 2).

On the date of the alleged injury, Mr. Hopkins was working with Charles

Emerson ("Mr. Emerson"), a Kettle Falls engineer (Ct. Rec. 31 at 2).  Near the end

of their shift around 5 a.m., Mr. Hopkins and Mr. Emerson attempted to couple two

cars (Ct. Rec. 31 at 2).  They made two attempts to couple the cars automatically,

but when they stretched the cars by moving the lead car, the cars did not stay

attached.  Dep. of Hopkins, Aug. 11, 2009 (Ct. Rec. 33-1 at 12); Dep. of Thum,

Nov. 17, 2009 (Ct. Rec. 33-1 at 24); Dep. of Emerson, Nov. 17, 2009 (Ct. Rec. 33-

1 at 37).  Mr. Hopkins alleges that he pulled the cut lever to open the knuckle[1], but

when the knuckle would not open on its own he went in between the cars to

manually open the knuckle.  Dep. of Hopkins, Aug. 11, 2009 (Ct. Rec. 33-1 at 12).

---

[1] During oral argument, counsel demonstrated how a cut lever unlocks a knuckle,

which is an iron object weighing approximately 80 pounds and is part of the

coupling equipment that connects two train cars.

ORDER DENYING SUMMARY JUDGMENT FOR PLAINTIFF ~ 2

He alleges that when he manually opened the knuckle, the knuckle fell on his right foot and injured it (Ct. Rec. 29 at 2).

No witnesses saw the incident; Emerson was sitting in a car at the time of the alleged injury (Ct. Rec. 29 at 2; Ct. Rec. 31 at 3). After the alleged injury, Mr. Hopkins radioed Mr. Emerson to tell him that the knuckle had fallen on his foot (Ct. Rec. 29 at 2). Mr. Emerson left the car and walked to Mr. Hopkins' location where he saw the knuckle on the ground (Ct. Rec. 29 at 2). Mr. Emerson and Mr. Hopkins then manually coupled the two cars (Ct. Rec. 31 at 3). At the end of their shift when Mr. Hopkins removed his shoe and stocking, Mr. Emerson observed that Mr. Hopkins had a red mark on his right foot, allegedly from the impact of the knuckle (Ct. Rec. 31 at 3).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going

ORDER DENYING SUMMARY JUDGMENT FOR PLAINTIFF ~ 3

to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

Summary judgment is inappropriate where sufficient evidence supports the claimed factual dispute or where different ultimate inferences may reasonably be drawn from the undisputed facts. *Miller v. Glenn Miller Productions, Inc.,* 454 F.3d 875, 988 (9th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323. The moving party must demonstrate to the court that there is an absence of evidence to support the non-moving party's case. *See Celotex,* 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A court will view the evidence in the light most favorable to the nonmoving party. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir. 2000).

### III. DISCUSSION

Mr. Hopkins has moved for partial summary judgment on the basis of his allegation that the Federal Safety Appliance Act ("SAA") was violated and that Kettle Falls' liability is absolute (Ct. Rec. 29 at 8). Mr. Hopkins asserts that the only issues at trial should be causation and damages (Ct. Rec. 29 at 8).

ORDER DENYING SUMMARY JUDGMENT FOR PLAINTIFF ~ 4

**A. Whether there is a genuine issue of material fact that the SAA was violated.**

The Federal Employers' Liability Act ("FELA") "makes railroads liable to their employees for injuries 'resulting in whole or in part from the negligence' of the railroad." *Norfolk S. Ry. Co. v. Sorrell,* 549 U.S. 158, 160 (2007) (citing 45 U.S.C. § 51). Railroad employees may establish a cause of action under the FELA by proving a defendant's negligence or a violation of the SAA. *See Norfolk and W. Ry. Co. v. Hiles,* 516 U.S. 400, 408 (1996).

The SAA requires railroad cars to be "equipped with . . . couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles." 49 U.S.C. § 20302(a)(1)(A). The United States Supreme Court has held "that the SAA creates an absolute duty requiring not only that automatic couplers are present, but also that they actually perform." *Hiles,* 516 U.S. at 408-09. Failure to perform is not dependent on negligence or proof of a defect. *Id.* at 409.

If a railroad employee can prove that the absolute duty to perform was breached, an SAA violation occurred and the employee does not have to prove the defendant's negligence. *See Carter v. Atlanta & St. Andrews Bay Ry. Co.,* 338 U.S. 430, 434-35 (1949). A plaintiff may assert that the SAA was violated by demonstrating that the couplers failed to couple automatically on impact "on the occasion in question." *Carter,* 338 U.S. at 434 (finding an SAA violation when

two cars failed to couple despite the defendant's claim that the coupler "worked previously and worked subsequently").

However, a defendant can raise a defense that the absolute duty imposed by the SAA was not breached by showing that (1) the coupling equipment was not "properly set" or "in a position" to automatically couple on impact, and (2) a defect did not cause the coupling equipment to become improperly set or prevent coupling. *Hiles,* 516 U.S. at 410; *see also Kavorkian v. CSX Transp., Inc.,* 117 F.3d 953, 958 (6th Cir. 1997) (summarizing a defense to an SAA violation). The United States Supreme Court has explained that the SAA's "legislative history contains no suggestion that Congress intended to prevent an employee from going between cars to ensure that the knuckle is open, that the locking pin is set, . . . or that the drawbar is aligned." *Hiles,* 516 U.S. at 410. The Court recognized that an employee may need to take these "preliminary steps" to ensure "proper performance of the coupler." *Id.* at 410 (finding that misaligned drawbars do not violate the SAA because drawbars, which are part of a car's coupling system, often become misaligned or improperly set in "the ordinary course of railroad operations" and this misalignment can prevent cars from coupling); *see also Affolder v. N.Y., Chi., & St. Louis R.R. Co.,* 339 U.S. 96, 99 (1950) (explaining that when a coupler is not "placed in [an] open or proper position" to allow for automatic coupling, the SAA is not violated).

ORDER DENYING SUMMARY JUDGMENT FOR PLAINTIFF ~ 6

Conversely, if the coupling equipment is defective and prevents automatic coupling, the absolute duty imposed by the SAA is breached. *See, e.g., O'Donnell v. Elgin, J & E. Ry. Co.,* 338 U.S. 384, 394 (1949) (finding an SAA violation when a coupler broke during a switching operation).

In the present case, the parties do not dispute that two cars failed to couple after Mr. Hopkins and Mr. Emerson twice attempted to couple the cars (Ct. Rec. 32 at 10); *see also* Dep. of Hopkins, Aug. 11, 2009 (Ct. Rec. 33-1 at 12); Dep. of Thum, Nov. 17, 2009 (Ct. Rec. 33-1 at 24); Dep. of Emerson, Nov. 17, 2009 (Ct. Rec. 33-1 at 37). However, Kettle Falls has set out facts that show a genuine issue for trial as to whether the SAA was violated.

**1. Whether the coupling equipment was "properly set" to allow for automatic coupling on impact.**

Kettle Falls shows that there is a genuine issue of material fact as to whether the coupling equipment was "properly set" to allow for coupling. Kettle Falls points to Mr. Hopkins' explanation as to why Mr. Hopkins went in between the cars: "Plaintiff attempted to open the other knuckle to attempt yet another coupling" (Ct. Rec. 29 at 8). In Mr. Hopkins' deposition, Mr. Hopkins said that he had to "reset the knuckle on the standing car" when he and Mr. Emerson were attempting to couple the cars. Dep. of Hopkins, Aug. 11, 2009 (Ct. Rec. 33-1 at 12). Viewing the facts in the light most favorable to Kettle Falls, the cars could have failed to couple because they were not placed in a position to allow for

ORDER DENYING SUMMARY JUDGMENT FOR PLAINTIFF ~ 7

coupling.  Failure to couple is not an SAA violation when a coupler is not "properly set" to allow for coupling.  *See Hiles,* 516 U.S. at 410; *Affolder,* 339 U.S. at 99.

**2. Whether a defect caused the coupling equipment to become improperly set or prevented the cars from coupling.**

Kettle Falls shows that there is a genuine issue of material fact as to whether a defect caused the coupling equipment to be improperly set or prevented the cars from coupling.  Kettle Falls sets out two different facts that show that the coupling equipment may not have been defective. Kettle Falls first points to the fact that it was not able to inspect the coupler, so Kettle Falls does not know whether the coupler was actually defective (Ct. Rec. 32 at 10).  Kettle Falls also points to Mr. Emerson's deposition testimony (Ct. Rec. 32 at 11).  During deposition, Mr. Emerson testified that "[t]he coupling device was just fine because we put [the knuckle] back in."  Dep. of Emerson, Nov. 17, 2009 (Ct. Rec. 33-1 at 39).  Kettle Falls asserts that the fact that Mr. Hopkins and Mr. Emerson were able to manually couple the cars suggests that the coupling equipment was not defective (Ct. Rec. 32 at 11).

Mr. Hopkins argues that there is no issue of material fact that the knuckle, which is part of the coupling system, was defective (Ct. Rec. 29 at 8).  Mr. Hopkins points to the deposition testimony of Mr. Thum, the president of Kettle Falls, in which he said that the a knuckle could not fall out of the coupling device

ORDER DENYING SUMMARY JUDGMENT FOR PLAINTIFF ~ 8

unless there was a defective knuckle pin (Ct. Rec. 29 at 8). Since the knuckle fell, Mr. Hopkins concludes that a defective knuckle pin explains the failed coupling (Ct. Rec. 34 at 6). While it is clear that a defective knuckle pin can cause a knuckle to fall, it is not clear whether a defective knuckle pin can cause the coupling equipment to be improperly set or prevent the cars from coupling. The SAA only addresses defects that affect the ability to couple. In this case, it is unclear why the cars failed to couple properly.

Even viewing the evidence in the light most favorable to Kettle Falls, there is a question of fact as to whether the coupler was defective and caused the failure to couple as required by the SAA, or whether the coupling equipment was improperly set. Therefore, the Court finds that there are issues of material fact as to whether the SAA was violated.

**B. Whether Defendant's affirmative defenses are viable as a matter of law.**

A violation of the SAA "eliminates contributory negligence as a consideration for any purpose." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 507, note 13, (1957) (citing *Carter*, 338 U.S. 430; *Myers v. Reading Co.*, 331 U.S. 477 (1947)). The relevant statute, cited by both Kettle Falls and Mr. Hopkins, provides:

> In all actions on and after April 22, 1908 brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact

ORDER DENYING SUMMARY JUDGMENT FOR PLAINTIFF ~ 9

that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided*, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

45 U.S.C. § 53 (emphasis in original).

Contributory negligence is available as an affirmative defense where there is no violation of an applicable safety statute. 45 U.S.C. § 53. Since this Court has found that there are issues of material fact as to whether the SAA was violated, the affirmative defense of contributory negligence is still viable as a matter of law.

## IV. CONCLUSION

The Court finds that there are issues of material fact as to whether the SAA was violated that make summary judgment inappropriate. Therefore,

**IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 28**) is **DENIED.**

2. The District Court Executive is hereby directed to enter this Order and furnish copies to counsel.

   **DATED** this 6th day of December, 2010.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Court Judge

ORDER DENYING SUMMARY JUDGMENT FOR PLAINTIFF ~ 10